UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.

| | |
|---|---|
| BILLY PARHAM, JR. | ) |
|   Plaintiff, individually and on behalf | ) |
|   of all others similarly situated | ) |
| | ) |
| v. | ) |
| | ) |
| THE WENDY'S COMPANY; WENDY'S | ) |
| RESTAURANTS, LLC; and WENDY'S | ) |
| INTERNATIONAL, LLC, | ) |
|   Defendant | ) |

## CLASS ACTION COMPLAINT

This lawsuit seeks to recover unpaid wages for all service technicians who worked for Wendy's in the United States at any time from December 2011 onwards. More specifically, the suit seeks unpaid overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. The suit also seeks unpaid wages for plaintiff Billy Parham, Jr. under the Massachusetts payment of wages and overtime laws, Mass. Gen. Laws ch. 149, § 148 and ch. 151, § 1A. Finally, Mr. Parham brings a claim for unlawful retaliation under Mass. Gen. Laws ch. 149, § 148A.

### Jurisdiction and Venue

1. The court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2. Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a) and (c), because the defendants do business in Massachusetts and are subject to personal jurisdiction in this district.

**Parties**

3.     Plaintiff Billy Parham is an adult resident of South Weymouth, Massachusetts.  Mr. Parham worked for Wendy's from August 1995 until June 2014.  Throughout his employment by Wendy's, Mr. Parham worked as a maintenance technician, most recently with the title of Senior Maintenance Technician.  As evidenced by his long tenure with Wendy's, Mr. Parham was a valuable employee who worked hard and was highly-regarded, at least until he exercised his rights under the wage laws.

4.     Defendant The Wendy's Company is a foreign corporation that does business in Massachusetts.

5.     Defendant Wendy's Restaurants, LLC is a 100% owned subsidiary of The Wendy's Company and is the parent company of Wendy's International, LLC.

6.     Defendant Wendy's International, LLC (formerly known as Wendy's International, Inc.) is the owner and franchisor of the Wendy's restaurant system in the United Stated.  The three defendants are collectively referred to in this complaint as Wendy's.

**Facts**

7.     Mr. Parham was responsible for the maintenance of Wendy's corporate-owned restaurants in the South Shore in Massachusetts and, at times, various other areas.

8.     Across the country, Wendy's has employed over 100 maintenance technicians in various locations over the last 2-3 years.  Those technicians perform the same duties and are subject to the same policies and procedures as Mr. Parham.

9.     Mr. Parham reported to a regional maintenance manager, who was responsible for Wendy's locations in the New England area.

10. Maintenance technicians and their regional maintenance managers, along with others in the maintenance area, reported to National Director of Facilities John Getha, who was responsible for overseeing all of Wendy's maintenance personnel across the country.

11. The principal duty of maintenance technicians is to maintain the physical plant of Wendy's restaurants through preventative maintenance and service calls.  There are three types of service calls: (1) 720's, which could be done within a month, (2) P48's, which had to be done within 48 hours, and (3) P24's, which had to be done within 24 hours.  Technicians receive service calls at all hours and are under constant pressure to satisfy all of the needs within their assigned territories.

12. Technicians are rated based on a corporate-wide "scorecard" system. Scorecards rate technicians on a variety of factors, including, for example, stores per week, repeat visits, the percent of their time billable to a restaurant, restaurant satisfaction, on-time response, and on-time completion.  Scorecard ratings affect a technician's evaluations, affect technician compensation, and can lead to disciplinary action.

13. In addition to preventative maintenance and service calls, maintenance technicians have to perform numerous other duties on a regular basis, including, among other things, taking inventory of truck stock, purchasing parts from various suppliers, attending or participating in online or in-person trainings or meetings, managing truck maintenance, responding to questions and inquiries from managers, writing self evaluations, analyzing whether and when to replace equipment, and preparing timecards and other records.  Generally, none of these duties are billable to a restaurant.

14. When possible, maintenance technicians were expected to bill their time to individual restaurants to the greatest extent possible, because the restaurants are billed for the work. Work that could not be billed to individual restaurants counted against the maintenance department. As a result, technicians were under intense pressure to minimize unreimbursed costs. Specifically, technicians were expected to bill at least 75 percent of their time or more to individual restaurants. If they failed to meet that target, they were subject to lower evaluations, lower pay, and disciplinary action.

15. At the same time, individual restaurants routinely complain about service they believe is too slow or if a technician bills what the store considers to be too much time for maintenance. Low evaluations from a restaurant adversely affect a technician's scorecard. As a result, technicians are under intense pressure to handle service calls as soon as possible and to minimize the amount of time they bill to a restaurant.

16. As a result of the conflicting pressures created by these corporate policies and procedures, technicians regularly record less than their actual working hours, resulting in a loss of regular and overtime wages.

17. Several years ago, Wendy's began to use an automated system called Corrigo, using a handheld device. The automated system has undergone various changes, but it has remained in place.

18. Originally, technicians kept track of their time on paper timecards. When Corrigo was first implemented, technicians were instructed to continue reporting their time on a paper timesheet. At some point, technicians were told to report their time on an electronic timecard. Although Wendy's could have established a system whereby technicians automatically logged in and out to record their working time, it did not do so.

Indeed, until shortly before Mr. Parham's termination, technicians were not even instructed to log in at the beginning of their day and to log off at the end of their day.

19. Technicians also were told that they were required to take 30 minutes for a meal break each day. If technicians did not record a meal break, they were instructed that they had to do so. Although technicians routinely could not take meal breaks given the intense time pressures they were under, they were nonetheless docked 30 minutes as a result of Wendy's requirement that they record a 30-minute meal break. As a result, technicians were not paid for time worked during a supposed meal break.

20. Wendy's management, including Mr. Getha, knew or had reason to know that technicians were routinely underreporting their actual working hours. Indeed, Mr. Parham was present at meetings with Mr. Getha when technicians reported to him that they were under pressure to underreport, and were underreporting, their time. Nonetheless, neither Mr. Getha nor other Wendy's managers took effective steps to ensure that technicians accurately reported all of their time. On the contrary, Wendy's continued to put substantial pressure on technicians to underreport their time by maintaining a scorecard system that effectively forced them to do so. As a result, Wendy's knew that its pay practices were in violation of the FLSA or showed reckless disregard for the existence of such a violation.

21. After having complained repeatedly to no avail about the intense time pressures technicians were under, Mr. Parham finally lost his patience and began, in the summer of 2014, to begin billing for all of his time. When his managers pushed back, he insisted that he be paid for all of his worked hours, as was his right under the FLSA and the Massachusetts wage laws.

22.     Shortly thereafter, Mr. Parham was falsely accused of violating Wendy's policies and was terminated.  The reason given for his termination was a pretexual one, used to justify Wendy's decision to retaliate against Mr. Parham based on his insistence that he be paid properly.

23.     Mr. Parham filed a complaint with the Massachusetts Attorney General's Office and received a right to sue.

24.     Mr. Parham has consented to bring and participate in this action pursuant to 29 U.S.C. § 216(b).  His written consent is attached as Exhibit A.

### COUNT I
**Fair Labor Standards Act (29 U.S.C. §§ 201 *et seq*.)**
(Class Claim)

25.     Mr. Parham incorporates the above paragraphs.  The defendants' knowing and willful failure to pay their technicians overtime wages violates the overtime provisions of 29 U.S.C. § 207(a).  This claim is asserted pursuant to 29 U.S.C. § 216(b).

### COUNT II
**Violation of Massachusetts Overtime Law (M.G.L. c. 151, § 1A)**
(Individual Claim)

26.     Mr. Parham incorporates the above paragraphs.  The defendants violated M.G.L. c. 151, § 1A, by failing to pay required overtime wages.  This claim is brought pursuant to M.G.L. c. 151, § 1B.

### COUNT III
**Violation of Massachusetts Wage Law (M.G.L. c. 149, § 148)**
(Individual Claim)

27.     Mr. Parham incorporates the above paragraphs.  The defendants violated M.G.L. c. 149, § 148, by failing to pay all earned wages.  This claim is brought pursuant to M.G.L. c. 149, § 150.

## COUNT IV
## Retaliation (M.G.L. c. 149, § 148A)
(Individual Claim)

28. Mr. Parham incorporates the above paragraphs. The defendants terminated Mr. Parham in retaliation for his rights under the Massachusetts wage laws, in violation of M.G.L. c. 149, § 148A. This claim is brought pursuant to M.G.L. c. 149, § 150.

## PRAYERS FOR RELIEF

WHEREFORE, Mr. Parham respectfully asks this Court to enter the following relief:

a. An order conditionally certifying a class of similarly-situated individuals and permitting the issuance of notice informing affected employees of their right to opt-in to this action;

b. A finding that the defendants' violations were willful and knowing, and therefore subject to a three-year statute of limitations;

c. An award of damages for all unpaid overtime wages, including liquidated damages;

d. An award of damages for all unpaid wages under Massachusetts law, including mandatory treble damages;

e. An award of damages for lost wages and emotional distress damages for Mr. Parham's retaliation claim under Massachusetts law, including mandatory treble damages;

f. An award of attorneys' fees, costs, and pre- and post-judgment interest; and

g. Such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Mr. Parham demands a trial by jury for all claims so triable.

BILLY PARHAM, JR.,
Individually and on behalf of
all others similarly situated,

By his attorney,

/s/ *Stephen Churchill*

_____
Stephen Churchill, BBO # 564158
Hillary Schwab, BBO # 666029
Brant Casavant, BBO # 672614
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
steve@fairworklaw.com
hillary@fairworklaw.com
brant@fairworklaw.com

Dated:  December 9, 2014